# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALI GADELHAK, on behalf of himself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) No. 17-cv-01559<br>) |
| v. | )<br>) Judge Edmond E. Chang |
| AT&T SERVICES, INC., | )<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ali Gadelhak brought this proposed class action after he received automated text messages from Defendant AT&T Services, Inc. (AT&T), allegedly in violation of the Telephone Consumer Protection Act (TCPA).[1] Gadelhak and AT&T now cross-move for summary judgment. The motions present the parties' disagreement over the proper definition of the statutory term "automated telephone dialing system," and whether AT&T employed one when it sent text messages to Gadelhak and others. For the reasons explained below, the Court grants AT&T's motion and denies Gadelhak's motion.

## I. Background

In deciding cross motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). So when the Court

---

[1]This Court has subject matter jurisdiction over the case under 28 U.S.C. § 1331 and 29 U.S.C § 1132.

evaluates Gadelhak's summary judgment motion, AT&T gets the benefit of reasonable inferences; conversely, when evaluating AT&T's motion, the Court gives Gadelhak the benefit of the doubt.

AT&T is a major telecommunications corporation. R. 22, Answer ¶¶ 6, 7. Since around 2015, AT&T has engaged in a program called the AT&T Customer Rules Feedback Tool, also known (at least to the parties) as "TACRFT." R. 70.8, Lyon Dep. at 12:9-12; R. 52.2, Lyon Dec. ¶2. According to AT&T, the program sends surveys to customers of its corporate affiliates—DIRECTV, for example—via text message in order to assess customers' recent interactions with service representatives. Lyon Dec. ¶¶ 2-4. At the end of each survey, AT&T also includes an advertisement for its smartphone application, MyAT&T. R. 70.5, Abel Dep. at 69:21-25.

AT&T employs an automated process to select the numbers to which it sends the TACRFT surveys. First, a computer system for each AT&T affiliate identifies customer accounts that have engaged in qualifying transactions with a customer service representative. Lyon Dep at 35:7-13, 36:15-37:13; Lyon Dec. ¶ 5. Then, each of those computer systems sends a list of the phone numbers associated with each flagged account to AT&T's Market Research Organization for further processing. Lyon Dep. at 139:21-24. The list of these phone numbers is known as the Gross Sample List. *Id.* at 139:21-140:6. This list includes every phone number associated with a flagged account, rather than just the phone number that engaged in the qualifying transaction. Lyon Dep. at 21:6-22:2; R. 74, Def.'s Resp. PSOF ¶¶ 7, 8. Once the Gross Sample List is compiled, a computer system within the Market Research

Organization narrows down the list to one number for each account by (1) removing any non-cellular numbers; and (2) selecting the first cellular number listed for each account. Lyon Dep. at 140:7-25; R. 74.3, Lyon Dec. II ¶¶ 3-6. This pared-down list is then sent to AT&T's outside vendor, Message Broadcast, who sends out pre-programmed text-message surveys previously drafted by AT&T. Lyon Dep. at 57:14-16, 130:13-20; R. 70.7, Joiner Dep. at 63:6-12. It is undisputed that a computer, not a human, compiles the list of telephone numbers to which these surveys are directed. Def.'s Resp. PSOF ¶¶ 9-11.

Plaintiff Ali Gadelhak lives in Chicago, Illinois and is not a customer of AT&T or any AT&T affiliate. R. 70.9, Gadelhak Dep. at 81:7-82:4, 84:2-85:14; Def.'s Resp. PSOF ¶ 38. Gadelhak registered his cell phone number with the Do Not Call list in May 2014. Gadelhak Dep. at 76:12-77:24. Nonetheless, in July 2016, Gadelhak received five text messages from AT&T asking survey questions in Spanish. Lyon Dec., Ex. A, Gadelhak Call Log; Gadelhak Dep., Ex. 33. AT&T insists that TARCRFT is designed to send text messages only to AT&T customers, so Gadelhak's number must have been erroneously listed on an AT&T account. Lyon Dec. ¶ 5; Def.'s Resp. PSOF ¶ 41.

In February 2017, Gadelhak brought this proposed class action against AT&T for violations of the Telephone Consumer Protection Act. Gadelhak alleges that AT&T "negligently, knowingly, and/or willfully contacted" him via text message using an automated telephone dialing system (ATDS) "without his prior consent." R. 20, Compl. ¶ 1. He also alleges that AT&T did the same to others, on whose behalf

3

Gadelhak brings class allegations. *Id.* ¶¶ 34, 35, 39. Both parties now move for summary judgment, content to litigate class certification (if Gadelhak were to prevail) after a decision on summary judgment. In its motion, AT&T asserts that it did not use an ATDS to send a text message to Gadelhak and thus did not violate the TCPA. R. 51, Def.'s Br. at 1. For his part, Gadelhak asks the Court to declare as a matter of law that AT&T's TACRFT system employs an ATDS. R. 71, Pl.'s Br. at 1-2. Much of the parties' dispute boils down to whether the D.C. Circuit's opinion in *ACA International v. FCC*, 885 F.3d 687 (D.C. Cir. 2018) nullified previous FCC orders defining the term ATDS and, if so, what is the proper definition of that statutory term under the plain language of the TCPA.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must "view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (cleaned up).[2] The Court "may not weigh conflicting evidence or make credibility determinations," *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d

---

[2]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

697, 704 (7th Cir. 2011) (cleaned up), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## II. Analysis

### A. Statutory and Regulatory History of the TCPA

To start, it is necessary to set forth the TCPA's framework. Enacted in 1991, the TCPA generally prohibits making calls using "any automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A). The statute defines ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1). This general prohibition has three exceptions: (1) calls made with "prior express consent;" (2) emergency calls; and (3) calls made to collect government debts. § 227(b)(1)(A).

The FCC has the authority to promulgate regulations implementing the TCPA. *See ACA International*, 885 F.3d at 693. In 2003, the FCC promulgated regulations that interpreted the term ATDS to include "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when

a sales agent will be available to take calls." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* (2003 Order), 18 FCC Rcd. 14014, 14091-93 ¶¶ 131-133 (2003). The Commission referred to these types of devices as "predictive dialers" and explained that they have "the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Id.* at 14091 ¶ 131. According to the 2003 Order, telemarketers may have primarily relied on dialing equipment "to create and dial 10-digit telephone numbers arbitrarily" in the past, but "to exclude… equipment that use[s] predictive dialing software from the definition of [ATDS] simply because it relies on a *given* set of numbers would lead to an unintended result." *Id.* at 14092 ¶¶ 132, 133 (emphasis added). The Commission reasoned that it made little sense to permit calls to "wireless numbers… when the dialing equipment is paired with predictive dialing software and a database of numbers," but prohibit calls "when the equipment operates independently of such lists and software packages." *Id.* ¶ 133.

The Commission affirmed this interpretation in 2008, explaining that the 2003 Order "found that, based on the statutory definition of [ATDS], the TCPA's legislative history, and current industry practice and technology, a predictive dialer falls within the meaning and definition of autodialer and the intent of Congress." *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2008 Declaratory Ruling"), 23 FCC Rcd. 559, 566 ¶ 13 (2008). Although a party to the 2008 proceeding urged the FCC to find that a "predictive dialer meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials

6

numbers from customer telephone lists," *id*. at 566 ¶ 12 (emphasis added), the Commission disagreed, stating that nothing presented by the party "warrant[ed] reconsideration of [the 2003] findings." *Id*. at 567 ¶ 14.

Seven years later, the Commission revisited and again reaffirmed its earlier take: "predictive dialers, as previously described by the Commission, satisfy the TCPA's definition of 'autodialer.'" *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* (2015 Declaratory Ruling), 30 FCC Rcd. 7961, 7972 ¶ 10 (2015). The Commission compared predictive dialers to dialers that "utilize random or sequential numbers instead of a list of numbers" and stated that both "retain the capacity to dial thousands of numbers in a short period of time." *Id*. at 7973 ¶ 14. In the Commission's view, any device that "generally has the capacity to store or produce, and dial random or sequential numbers… even if it is not presently used for that purpose, including when the caller is calling a set list of consumers," met the definition of "autodialer" under the TCPA. *Id*. at 7972 ¶ 10.

Under the Hobbs Act, this Court, sitting as a district court, does not have the authority to invalidate the FCC's rulings, because "[t]he court of appeals … has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part) or to determine the validity of all final orders of the [FCC]." 28 U.S.C. § 2342(1); *see also* 47 U.S.C. § 402(a) (making § 2342(1) applicable to FCC regulations promulgated under the TCPA); *Blow v. Bijora*, 855 F.3d 793, 802 (7th Cir. 2017).[3] In *ACA International*,

---

[3]The Supreme Court is considering this interpretation of the Hobbs Act in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc*., No. 17-1705 (oral argument heard on March 25, 2019). That particular dispute does not impact the Court's holding here.

7

however, the D.C. Circuit consolidated several Hobbs Act petitions for review of the 2015 Declaratory Ruling and invalidated the Commission's interpretation of ATDS, because it "fail[ed] to satisfy the requirement of reasoned decisionmaking." 885 F.3d at 703. The D.C. Circuit explained that the 2015 Declaratory Ruling adopted two irreconcilable definitions of the term ATDS: "A basic question raised by the statutory definition is whether a device must *itself* have the ability to generate random or sequential telephone numbers to be dialed. Or is it enough if the device can call from database of telephone numbers generated elsewhere? The Commission's ruling appears to be of two minds on the issue." *Id.* at 701 (emphasis in original). Despite this holding, the D.C. Circuit declined to define ATDS in its own terms, but stated that it was permissible for the Commission to adopt either interpretation. "But the Commission cannot, consistent with reasoned decisionmaking, espouse both competing interpretations in the same order." *Id.* at 703. So the D.C. Circuit invalidated the 2015 Declaratory Ruling.

## B. *ACA International*'s Scope

In this case, neither party disputes that the Commission's 2015 Declaratory Ruling was overturned and invalidated by *ACA International*. Def.'s Br. at 8; Pl.'s Br. at 15. AT&T, however, argues that the opinion also invalidated the Commission's prior rulings defining ATDS, Def,'s Br. at 8-11, while Gadelhak asserts that the case's holding is limited to the 2015 Declaratory Ruling, Pl.'s Br. at 15-20. A close read of *ACA International* and the 2015 Declaratory Ruling make clear that AT&T has the better argument.

8

It is true that the petitions in *ACA International* sought review only of the 2015 Declaratory Ruling, but the petitions zeroed-in on four specific aspects of the order. *ACA International*, 885 F.3d at 693-94. Most pertinent to this case was the Commission's interpretation of what functions a system needs to have in order to qualify as ATDS. On that question, the Commission argued "that the issue was resolved in prior agency orders—specifically, declaratory rulings in 2003 and 2008," and that it was too late to "raise a challenge [to those orders] by seeking review of a more recent declaratory ruling that essentially ratifies the previous ones." *Id.* at 701. The D.C. Circuit disagreed and proceeded to review all "pertinent pronouncements" from the Commission on the subject. *Id.* The court determined that "[t]he agency's prior rulings left significant uncertainty about the precise functions an autodialer must have the capacity to perform," and then also set aside the Commission's "treatment" of the qualifying functions of an ATDS. *Id.* at 701, 703.

The Commission's own language in the 2015 Declaratory Ruling also bolsters the interpretation that *ACA International* nullified the FCC's previous pronouncements defining ATDS. The 2015 Declaratory Ruling states that the Commission "reaffirm[s]" previous statements, and refers specifically to the 2003 Declaratory Ruling. 2015 Declaratory Ruling, 30 FCC Rcd. at 7971 ¶ 10 & n. 39; *see also ACA International*, 885 F.3d at 694 ("The Commission reaffirmed prior orders deciding that 'predictive dialers'—equipment that can dial automatically from a given list of telephone numbers using algorithms to predict 'when a sales agent will be available'—qualify as autodialers.").

9

Moreover, the D.C. Circuit's concern in *ACA International*—that the 2015 Declaratory Ruling, "in describing the functions a device must perform to qualify as an autodialer, fails to satisfy the requirement of reasoned decisionmaking"—equally applies to the 2003 and 2008 orders. 885 F.3d at 703. The 2003 Order made clear that the Commission saw a difference between generating and dialing random or sequential numbers, on the one hand, and dialing from a list of numbers on the other. 2003 Order, 18 FCC Rcd. at 14092 ¶ 132*; see also ACA International*, 885 F.3d at 702. But it then went on to state that, "to exclude from these restrictions equipment that use predictive dialing software from the definition of 'automated telephone dialing equipment' simply because it relies on a given set of numbers would lead to an unintended result." *Id.* at 14092 ¶ 133. The 2008 Declaratory Ruling held the same, as it simply "affirm[ed]" the interpretation of ATDS promulgated in the 2003 Order. 2008 Declaratory Ruling, 23 FCC Rcd. at 566 ¶ 12. With the Commission's repeated affirmations of the prior orders, this Court holds, as other courts in this District have, that *ACA International* invalidated the Commission's understanding of the term ATDS as articulated in the 2015 Declaratory Ruling, as well as the 2008 Declaratory Ruling and the 2003 Order. *See Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 935 (N.D. Ill. 2018); *Johnson v. Yahoo!, Inc.*, 346 F. Supp. 3d 1159, 1161 (N.D. Ill 2018).

### C. Defining ATDS Under the TCPA

Because *ACA International* invalidated the Commission's prior orders defining the term ATDS—and also declined to articulate their own definition of the term—the

10

Court moves on to interpreting the TCPA unburdened by the Commission's definitions. Here, the pertinent question is really whether predictive-dialing devices that lack the capacity to generate numbers either randomly or sequentially, and instead only dial numbers from a predetermined list, meet the statutory definition of ATDS. AT&T argues that the statutory text dictates a "no" answer, Def.'s Br. at 11-13, while Gadelhak asserts that a device "that *stores* telephone numbers to be called and automatically dials those numbers falls within [the] statutory definition," Pl.'s Br. at 6 (emphasis in original).

The Court "must begin with [the TCPA's] text and assume that the ordinary meaning of that language accurately expresses the legislative purpose." *Our Country Home Enters., Inc. v. Comm'r*, 855 F.3d 773, 791 (7th Cir. 2017) (interpreting 28 U.S.C. § 6330(c)(4)(A)) (cleaned up). In other words, the Court must give the TCPA its plain meaning. *Coleman v. Labor & Indus. Review Comm'n of Wis.*, 860 F.3d 461, 473 (7th Cir. 2017). To do so, the Court begins with "the language of the statute itself," attending to "the specific context in which that language is used." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1077 (7th Cir. 2013) (cleaned up) (quoting *McNeill v. United States*, 563 U.S. 816, 819 (2011)). And it must "accord words and phrases their ordinary and natural meanings and avoid rendering them meaningless, redundant, or superfluous." *Scherr*, 703 F.3d at 1077 (cleaned up).

Under the TCPA, an ATDS has "the capacity to store or produce telephone numbers to be called, using a random or sequential number generator," and then call the numbers. 47 U.S.C. § 227(a)(1). Gadelhak asserts that the phrase "using a

random or sequential number generator" modifies only the verb "produce," and has no effect on the verb "store." Pl.'s Br. at 7. Gadelhak cites to the Ninth Circuit opinion in *Marks v. Crunch San Diego, LLC* to support this argument. *Id. (*citing 904 F.3d 1041, 1051-52 (9th Cir. 2018)). In *Marks*, the Ninth Circuit defined ATDS as "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers." 904 F.3d at 1053. The court came to this conclusion after examining § 227(a)(1), other provisions of the TCPA, and the legislative history of the statute. *Id.* at 1050-53. This Court respectfully disagrees with the Ninth Circuit's holding in *Marks* and Gadelhak's argument here.

At the outset, Gadelhak's reading of § 227(a)(1) is difficult to square with the plain language of that provision. Both "store" and "produce" are transitive verbs, meaning both require an object. *Pinkus*, 319 F. Supp. 3d at 937-38. Here, that object is "telephone numbers to be called." § 227(a)(1). And the phrase "using a random or sequential number generator" modifies neither "store" nor "produce," but instead actually modifies "telephone numbers to be called." *Id.* This is evidenced by the phrase's position immediately after "telephone numbers to be called." *Id.* Put another way, the most sensible reading of the provision is that the phrase "using a random or sequential number generator" describes a required characteristic of the *numbers* to be dialed by an ATDS—that is, *what* generates the numbers.

To resist this interpretation, Gadelhak points to other provisions in the TCPA. As he discusses in his brief, there are two exceptions to the prohibition against

12

automated calls that, it is true, do lead one to question whether calls dialed from a predetermined list are covered. Pl.'s Br. at 8-10. First, there is an exception for calls made with the prior consent of the called party. 47 U.S.C. § 227(b)(1)(A). Gadelhak, citing *Marks*, argues that there is no way to take advantage of this exception without dialing from a list of telephone numbers belonging to consenting individuals. Pl.'s Br. at 9 (citing *Marks*, 904 F.3d at 1051). Put another way, the exemption seems to imply that calling from a predetermined list of numbers qualifies a device as an ATDS, but that when the list is of those individuals who have given their consent, it is exempted from the prohibition. What Gadelhak overlooks though, is that the consent exception is drafted in such a way that it also applies to calls made using an artificial or prerecorded voice—not just those made using an ATDS. 47 U.S.C. § 227(b)(1)(A). So the consent exception still does have an effect—it does not suffer the embarrassment of being nugatory—even if ATDS does not cover systems that dial from preset lists. The consent exception does not undermine the non-preset-list interpretation of ATDS.

The second exception on which Gadelhak relies is for calls "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). But the same reasoning applies to undermine the persuasiveness of the inference to be drawn from this exception: it also applies to calls made with an artificial or prerecorded voice. 47 U.S.C. § 227(b)(1)(A). So, again, the federal-debt

13

exception can co-exist with a definition of ATDS that does not cover calls to a preset list.[4]

Similarly, Gadelhak's argument that Congress ratified the Commission's construction of the TCPA when it added the federal-debt exception in 2015, but left the definition of ATDS unchanged, is insufficient to overcome the plain meaning of the statutory definition of ATDS. The D.C. Circuit's review of the 2015 Declaratory Ruling was already pending at the time of Congress's amendment. *See ACA v. FCC*, Case No. 15-1211 (D.C. Cir.), Dkt. No. 1 (July 10, 2015) (Petition for Review); Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301, 129 Stat. 584, 588 (Nov. 2, 2015). As a result, there was no "consistent judicial construction" at the time of the amendment, precluding any conclusions about Congress's approval of the Commission's interpretation of the statute. *See Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 350-51 (2005).

Gadelhak's final argument is that the Court's reading of § 227(a)(1) renders the word "store" superfluous, "because any number that is stored using a random or sequential number generator must logically also have been produced using a random or sequential number generator." Pl.'s Br. at 11. At the outset, even if this were true, it would not, by itself, justify disregarding the plain meaning of the provision. "The canon against surplusage is not an absolute rule." *Marx v. General Revenue Corp.*,

---

[4] It must also be said that, as time marches on and Congress adds to and amends a statutory framework in piecemeal provisions, at some point it is not surprising that provisions are added as fail-safe measures to broadly prevent the statute's application in a particular setting. This might be an instance where Congress simply wanted to guarantee that the TCPA, which set a statutory damages minimum for violations (and per violation), would never be applied to attempts to collect a debt owed to the federal government.

14

568 U.S. 371, 385 (2013). More important, the Court's interpretation does not actually render "store" superfluous. The word's presence in the provision ensures that systems that generate numbers randomly or sequentially, but then store the numbers for a period of time before dialing them later after a person has intervened to initiate the calls, are still covered by the statutory definition of ATDS. All in all, none of Gadelhak's arguments are persuasive; instead, the numbers stored by an ATDS must have been generated using a random or sequential number generator.

### D. Application to AT&T's TACRFT Program

Gadelhak concedes that the system employed by AT&T for its TACRFT program "generates a list of telephone numbers to be called via automated computer processes." Pl.'s Br. at 12. Based on this description, AT&T's system is not an ATDS as defined in the statute. Gadelhak makes the additional argument, though, that "AT&T's dialing system also uses a random number generator to produce telephone numbers to be called." *Id.* at 13. In support of this assertion, Gadelhak cites to deposition testimony from AT&T's Director-Market Research & Analysis, Kerry Lyon. *Id.*; Lyon Dep. at 141:22-143:19; Lyon Dec. ¶ 1. Lyon stated that, when AT&T's system was confronted with an account that had more than one cellular phone number listed, he was not sure how the system chose which cellular number to call: "[I]t could be randomized, I'd have to look at the code." Lyon Dep. at 143:16-17. Gadelhak latched onto this comment as proof that AT&T's system was generating telephone numbers randomly. Lyon, however, later submitted a declaration in which

he clarified that the AT&T system "selects the first eligible wireless number to send the survey system." Lyon Dec. II ¶ 5.

Even so, Gadelhak continued to argue that Lyon's testimony was proof that AT&T's system at least had *the capacity* to generate numbers randomly, because it was able to "randomly" select numbers to dial from the compiled list of accounts. Pl.'s Br. at 13 ("Plaintiff pointed to the deposition testimony of Kerry Lyon, who testified that when the initial list of telephone numbers contains multiple telephone numbers for the same account, the computer randomly selects one of those numbers to receive the text message and thus randomly generates that number for dialing."). But the D.C. Circuit already explained that numbers must necessarily "be called in *some* order—either in a random or some other sequence." *ACA International*, 885 F.3d at 702 (emphasis in original). Accordingly, the phrase "using a random or sequential number generator" would be meaningless if it simply referred to the order in which calls were made. Moreover, the organization of the provision does not support a reading where "using a random or sequential number generator" refers to the order numbers from a list are dialed. Otherwise, the provision would read "to store or produce telephone numbers to be called; and to dial such numbers, using a random or sequential number generator." Based on the record evidence, there is no genuine dispute that AT&T's system cannot *generate* telephone numbers randomly or sequentially—as those terms are used in the TCPA—and thus it is not an ATDS and is not prohibited.

## IV. Conclusion

For the reasons discussed, Gadelhak's motion for partial summary judgment is denied and AT&T's motion for summary judgment is granted. Final judgment shall be entered. The status hearing of April 4, 2019 is vacated.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 29, 2019